Good morning, gentlemen. My name is Stephen Perkins. I'm a Deputy Attorney General for the State of California. In this matter, I represent all defendants who are also appellants. And I realize from the documents that were sent to me by the court that you are all familiar with the record and the briefs you have in front of you. But I want to go over a few dates that highlight what is before the court in this matter. And the first date is December 24, 1996, when this action was first filed. The reason that's significant is it is clearly subject to this new set of statutes known as the Prison Litigation Reform Act. The second significant date – well, by the way, at that time, plaintiff was housed in Folsom State Prison, and he was alleging violations of his constitutional rights at the prison. The second significant date is on January 19, 1999. That's a little over two years later. The plaintiff got transferred to a prison in Ione, California, called Mule Creek. And he got transferred there because Mule Creek happens to be a higher security prison. Folsom, those old prisons now are low security. And he went to the higher security prison because he had been convicted of possessing dope in Folsom Prison. He got caught with some crank or some kind of dope. Anyway, he got a more severe sentence and went to the higher security prison, which is standard would happen to any inmate. Then on September 2, 1999, the plaintiff got counsel in this case. They get appointed on the case. Keep in mind, this is eight months after plaintiff has left Folsom Prison. And then the next significant date is a little over a year after that. The summary judgment order comes out, and in it, it says defendants violated plaintiff's rights back at Folsom when they wouldn't let him have Dungeons & Dragons materials. I'm paraphrasing, of course. What that amounts to, and the Supreme Court cases support this, Hewitt v. Helms and Rhodes v. Stewart, he acquired a judicial pronouncement that defendants violated the Constitution unaccompanied by judicial relief. There was no relief at that point. All he got was this judicial pronouncement, which the cases, every case I've ever seen that deals with the subject, the stuff of which prevalence is based. You have to have more. You have to have actual relief to get that. Your point on the attorney's fees prong of this is that the materials were returned to the prisoner by prison officials without an injunction. Yes, sir. Or a court order of any kind. Yes, sir, they were. And next in my sequence of dates, we go to trial, and he gets $251 in damages total for the case. No injunction, no declarative judgment, nothing. So all there is in the case in the form of relief is $251. Now, I concede these other things happened, but they were not court-ordered relief. Your position is he's entitled to $502. Well, whatever that computes out, $1.5 times $251, and 25 percent of it has to be paid from the inmate's judgment according to those statutes. Now, is your position that if an injunction had been entered against you requiring, for example, the return of the materials and requiring, for example, the cleaning up of his disciplinary file, that we would not be limited by the 150 percent provision applicable to damages? I don't know if I want to go that far and say that because that's really not an issue in this case, but I would say it is. It put me in a much different position. It is and it isn't because if we conclude that the summary judgment order is tantamount to ordered relief, then we've got to address that question. No, I don't think it is, and I'll tell you why I don't think it is. I've got three reasons why that summary judgment order does not amount to declaratory judgment or injunctive relief. First off, there was nothing about that order that was appealable at that time. It wasn't a final judgment that could go up. It was just an interim statement, as I said earlier, a judicial pronouncement in the language of Hewitt versus Helms, and the court didn't even call it a declaratory judgment. It just mentioned that his rights were violated a couple of years ago back at Folsom. And also, and the most critical thing, is any equitable issues in that case at the time the court issued that order, which is September 25, 2000, had been moot for over 20 months by virtue of plaintiff's transfer to this higher security prison. Well, the order, I guess it's Regulation J in Folsom Prison might be moot because he's no longer in Folsom, but the return of the materials to him doesn't sound to me as it's moot, nor does the removal of materials from his file sound to me as though it's moot. Or am I misunderstanding the facts of the case? Well, Your Honor, a little bit, because that was not done by the defendants in this case. That was done by other people at another prison. Now, When you say that was done, what are you referring to? The return of his property and the expungement of the record in his file. It's done by other people, unrelated to these people who are still back in the same old cell block at Folsom Prison. You got a different crew of people. Now, that case I referred to But that had not been done at the time of the entry of the order, correct? That's to say the materials had not been returned to him and the materials had not been taken out of his file. At the time, we get the order that says there was a violation of his rights, correct? That's correct. Yeah. So at that time, those two things are not moot. I think they are moot. The defendants were not in a position to do those things. They no longer had any possession, custody control, or face control about this inmate. It would be more a question of addressability with respect to these defendants rather than the fact that he got the relief that he wanted. Yes, sir. And that's exactly what this court found to be the situation and why fees weren't allowed in a case I referred to as an unsightable opinion of this court. Because they had the wrong parties in there. Now, plaintiffs could have amended. They could have amended to add plaintiffs who were still back at Folsom Prison. They could have amended to add in defendants who were now down at Mule Creek Prison or who were high enough in the system that they oversaw both prisons, but they didn't. So they're talking about these five people who were still back in the cell block at Folsom Prison. At any rate, let me get going here. I've got two and a half minutes. I was going to go through the trial court's record, but rather than do it point by point, just let me point out, if you read that, you will see the trial court's order is extremely confused. It makes references over and over and over to things that are necessary to enforce a judgment and monitoring relief that's been ordered when there was no non-monetary court-ordered relief. It just didn't happen in this case. And the court spent all this time talking about it, but it was never an issue. There was something in plaintiffs' briefs about how I didn't ever object to the proportionality of the amount of the judgment to the relief obtained. Well, I didn't because it was my understanding that the statute by operation of law codified reasonableness. What is the reasonable fee? And it does. If you read it, it tells you exactly what it is. First, you've got the general American rule. Everybody pays for their own lawyer, an exception created by Congress that says, except in civil rights cases where there's a prevailing party, the loser's got to pay. And then you've got a qualification on the exception created by 1997E that says, in these present cases, they only get one-and-a-half times the amount of cash-ordered judgment. And also, as far as reasonableness, you've just got to step back from this and say, wait a minute, what about this? All these legal niceties, but when you have a $75,000 fee, give or take, awarded for a $250 verdict, that is absurd. You know, there was this law school professor who says, whenever you want to know how these things should come out, you apply the next-door neighbor test. You go ask your next-door neighbor who doesn't know a thing about the law, how should this come out? There is no way in common sense that plaintiffs are entitled to $75,000 for getting this guy $251. That's all I have. Thank you. You have a little bit of time for rebuttal. Thank you for your argument. Appreciate it. We'll hear from the other side at this time. Mr. Cardozo. Thank you, Judge Hawkins. May it please the Court. There's only one relevant date, and Judge Fletcher has already touched on it. On September 25, 2000, when the Court issued its ruling, this case was not moot. The property hadn't been returned. The conviction was still on its record. Therefore, the Court had jurisdiction and rendered a dispositive liability finding. As long as we're asking the next-door neighbor, let's ask the next-door neighbor what he or she thinks court-ordered relief means. Tell the next-door neighbor that we've got a practice that continued unabated for five years. A court renders a dispositive, non-moot liability finding that completely disposes off the issue and rules that the practice is unconstitutional, and only then does the practice change. Only then is the property returned. Only then is the conviction expunged from the record. Let's talk about the arguments your opponent makes. He says you didn't prevail because, number one, the main thing you saw in this matter was the return of the D&D materials. And that was done by the prison officials without a court order. What's your response? Absolutely not. The court order preceded the return and the defense that the wrong parties are before the court, that these defendants don't have the ability to comply, was never litigated in this case. We named every single warden on down official who had anything to do with the seizure of the property. Not once is it alleged that these defendants don't comply, they don't have the property, they don't have power to expunge the conviction. After the court order, the property is returned, the conviction is expunged, on the day before the court was going to rule on mootness after the issue had been fully briefed and it was clearly not a moot case. At that point, to say that, well, you've named the wrong parties, if they can have someone else return the property and defeat our ability to even bring in the right parties without even raising that defense, that's exactly the same type of judicial shell game that they're playing with this definition of court-ordered relief. At some point in this timeline, your client was moved from one correctional facility to another, correct? Correct. When did that happen in relation to the court order? It was well before. But, again, the point at this time, I'm just trying to get this straight in my mind. At the time the order was entered saying that his First Amendment rights had been violated and you're telling us that the property should be returned, he was still at Folsom? No, no. He was at another prison. But he had a right to that declaration. The case was not moot because his property had still not been returned. That was an unlawful seizure. And the disciplinary conviction is in a central file. It unquestionably affects him at Mule Creek State Prison. If that isn't removed from his file, you think the prison officials are going to go out and examine the circumstances of the violation and discover that a federal court in Sacramento has ruled that he hadn't committed any violation. It was an unconstitutional practice. Of course not. It's not a moot case. He has a right to have that removed from the central file because that follows him to every prison he goes to. Now, there are three pieces of relief potentially at issue stemming from this ruling. One of them is return of his materials. The other is removal of the material from the file. And the third is the change of so-called policy J at Folsom Prison. Was there a policy J also at Mule Creek that was at issue? No, there was not. So at the time that this suit is ruled on, policy J is no longer affecting him. So as to policy J, the third of the three things that I just named, it may well be moot as to him. Not the other two, but policy J. Possibly, but then again, policy J is the only basis that the state has for keeping his property and not removing it from his conviction. So I think he is entitled to a judicial ruling. I guess what I want to say is not the declaratory judgment as to whether or not policy J violated, but the injunctive relief upon which you are promising at least part of your argument for attorney's fees. That injunctive relief that you say would have followed, I don't think that injunctive relief as to policy J would have followed because he's no longer in the prison and no longer subject to it. The injunctive relief would have followed only as to return of his dungeons and dragon materials and only as to removal of the material from his file. Isn't that right? That's correct, as well as a declaration that policy J is unconstitutional. I understand that. But relief specifically applicable to him, that is to say that policy, that has nothing to do with him anymore. To follow up, because Your Honor's question implicates, there's never been a contention that the attorney's fees awarded are not proportional to the non-monetary relief our client obtained in this case. The contention was always that that relief does not qualify as court-ordered relief. Yes. The proportionality question has been waived by failure to raise it in the district court because that is inherently a question of fact. And just so Your Honor knows, some of the things we could have litigated had that issue been raised. The inventor of dungeons and dragons came and testified on our client's behalf that these materials he had personally created were extremely valuable because he had used his imagination to create a unique twist. The inventor opined, the inventor who has the contract with Mattel, opined that our client could have sold his materials for a significant value. That was never opposed. The State's argument, defense at trial on the damages, was essentially he's a criminal, don't give him money. The jury presumably found that because the property had been returned, any market or value that the materials had was still available to him, and that's why it didn't give him damages. But in terms of the value of the non-monetary relief, the return, those are all factual findings available on a proportionality review that we could have identified and litigated in the district court. The issue has been waived. And in this case, since all of this arises in the Prison Litigation Reform Act, which the purpose is to avoid unnecessary litigation, not only do settled rules of appellate procedure support the waiver, but this is certainly not the case to permit late-in-the-game arguments. And while I'm on that subject, I want to touch on another question Judge Fletcher raised. This court doesn't need to decide whether the Prison Litigation Reform Act's monetary cap applies to non-monetary relief. That argument was never raised in the district court, was never raised in the opening brief, was never raised in the reply brief. That is a substantial question of first impression that would implicate constitutional issues. Every court that has decided on the constitutionality of the statute has assumed that the cap doesn't apply to declaratory and injunctive relief and has decided the constitutionality question on that basis, based on that assumption. The court on that issue should simply deem it waived, say it's not an issue in this case, because it hasn't been raised. I have nothing further, Your Honor. I don't see any other questions. Thank you for your argument. Thanks for coming in today. You have a little bit of time for rebuttal, just half a minute. I'll talk as fast as I can. I'd just like to remind the court the review in this case, I believe, is de novo, and what the court should do is, after seeing the errors in the district court's order, is just disregard it and start from scratch with the motions that are in front of it. He says, well, the word prevalence comes up, and we have conceded all along that they prevailed on the issues. But what they prevailed on was $250 worth, $251 of court relief. They didn't prevail on anything significant. And to the extent they did get these things they wanted, that is this catalytic relief that Buck Hannon and then Bennett, the Ninth Circuit case, says you can't do anymore. That stuff doesn't count. You've got to get it in writing, basically. And he said it's extremely valuable. Well, the expert came in and said this stuff is extremely valuable. The jury saw it to be valuable to the tune of $1. So I'd ask you to read Rhoades v. Stewart again, an old case, but it's almost exactly the same. They're entitled to $251 times 1.5, whatever that is, and I submit the matter. Thank you very much. Thank you for your argument. The case just argued will be submitted.
judges: Hawkins, W.fletcher, King